PENNINGTON WHITEHEAD, as Substituted Trustee of the Trust Created by the Last Will and Testament of JOHN A. HAGGERTY, Deceased, for the Benefit of FANNIE DRAPER, and Remaindermen, Respondent, *v.* MARIA H. DEHON POLK and Others, Respondents, Impleaded with ELISABETH S. CRAFTS and Others, Appellants.

First Department, July 13, 1917.

**Will construed — gift of life interest in trust estate to nieces of testator with provision that shares of beneficiaries be increased on the death of any beneficiary without issue — will intended to effect equality among beneficiaries — when descendants of deceased nieces entitled to share in increase resulting from death of beneficiary without issue.**

A will devised the residuary estate in trust with a power of sale, with a direction that the estate be divided into six equal shares to be separately invested for the benefit of six nieces of the testator, the income from each share to be paid to the beneficiary for life. It was provided that if any niece died before the testator leaving issue him surviving her share should go to the issue absolutely, but if such niece left no issue surviving her share was to become part of the residuary estate and the number of shares into which the same was to be divided were to be reduced accordingly. It was further provided that on the death of any niece who survived the testator, leaving issue her surviving, the share set apart for her use and any addition thereto was to go to her issue, share and share alike, but it was provided that if such niece left no issue her surviving her share of the estate was to be divided and added in equal parts to the remaining shares and that such addition to each share at the death of the taker thereof without issue would be divided among the then survivors of the testator's nieces and the issue then living of any of said nieces then dead, who were to take the share the parent would have taken if then living. Will construed, and

*Held,* that the evident intention of the testator was to treat his nieces on the basis of absolute equality, without any preference either for those leaving issue, or dying without issue.

*Held further,* that when a niece died without issue, the number of the remaining shares was reduced by one, but when a niece died leaving issue there was no reduction of the number of shares into which the trust estate was to be divided, and the issue of such deceased niece took not only their mother's original share but became entitled to a division of the additions to the share caused by the subsequent death of any niece without issue.

LAUGHLIN, J., and CLARKE, P. J., dissented, with opinion.

APPEAL by the defendants, Elisabeth S. Crafts and others, from part of a judgment of the Supreme Court in favor of the respondents, entered in the office of the clerk of the county of New York on the 16th day of November, 1916, upon the decision of the court after a trial at the New York Special Term.

*Frederick Geller,* for the appellants.

*John H. Cole,* for the defendants, respondents.

SHEARN, J.:

This appeal involves the construction of the 5th clause of the will of John A. Haggerty, which created trusts in the residuary estate for the benefit of his six nieces therein mentioned. The 5th clause of the will reads as follows:

" *Fifth.* I give, devise and bequeath all the rest, residue and remainder of my estate, real as well as personal to my executors hereinafter mentioned and to the survivor of them, In Trust, and with power to sell and convert the same into money, and for that purpose to execute good and sufficient conveyances of the same, to vest the title in the purchasers, and upon the Further Trust and with power to divide the net proceeds of my residuary estate into six equal shares and to invest each share separately in such securities as they, and the survivor of them shall deem prudent, and to receive the income of each share and apply the same as follows, of one of each said shares to the use for life of my niece Anna Kneeland Haggerty, daughter of my brother Ogden, of another of said shares to the use for life of my niece Clemence Haggerty daughter of my said brother Ogden, of another to the use for life of my niece Maria Haggerty Draper, daughter of my sister Frances S. Draper, of another to the use for life of my niece Fanny Draper daughter of my said sister Frances S., of another to the use for life of my niece Jessie Draper daughter of my sister Elizabeth Anna Draper, and of the other to the use for life of my niece Maria Haggerty Dehon daughter of my sister Maria Louise Dehon.

" In the event that either of my said nieces shall not survive me, but shall leave issue surviving me, then the principal of the share designed for her use shall go to such issue absolutely, if she shall leave no issue surviving me then such share shall

form a part of my said residuary estate and the said number of shares into which my said residuary estate shall be divided shall be reduced accordingly.

" And upon the FURTHER TRUST, upon the death of any one of my said nieces who shall survive me, leaving issue her surviving to pay and deliver the share which had been set apart for her use, and any addition thereto that may have been made as hereinafter provided, to such her issue, if more than one issue then share and share alike, if she shall leave no issue surviving her then the said share so set apart for her use shall be divided and added in equal parts to the remaining shares and such addition to each share shall at the death of the takers thereof respectively without issue surviving be divided equally among the then survivors of said nieces, the issues then living of any of said nieces then dead to take the share the parent would have taken if then living, and as to the share of the last survivor of said nieces, in case she shall die leaving no issue her surviving, but issue of any or either of the other deceased nieces shall survive her, then I give the last mentioned share, with any addition that may have been made thereto, to such surviving issue of such other nieces (the issue to represent the parent and to take the same share the parent would have taken if then living), if no issue of either of such other nieces shall so survive then I give said last mentioned share, with said additions to such person or persons as such last surviving nieces shall by her last will direct and appoint, and in default of such will I give the same to my next of kin under the laws of the State of New York as if I had died intestate."

All of the nieces survived the testator. The first niece to die was Anna Kneeland Haggerty, who died without issue in March, 1907. The second niece to die was Maria Haggerty Draper, who died March 16, 1911, without issue. The third to die was Clemence Haggerty, who after marriage was known as Clemence H. Crafts. She died in February, 1912, leaving four daughters, who together with their issue are defendants in the action. The fourth niece, Fannie Draper, died on January 10, 1914, without issue, leaving surviving two of the original six nieces, the defendants Maria H. D. Polk and Jessie Draper Bowne.

The will in its entirety gives evidence of intention to treat the nieces on the basis of absolute equality, without any preference either for those leaving issue or dying without issue. For example, the 4th clause, which bequeaths an annuity to the testator's friend Collison, provides, upon the death of Collison, as follows: " I give the principal of said investments to such of my six nieces hereinafter mentioned as shall survive the said Christian Collison and to the issue, if any, then living, of any of my said nieces then dead, share and share alike, the issue to take only the share the parent would have taken if then living." Further, in the 5th clause creating the trusts in question, the following provision is made in the event of any of the nieces not surviving the testator: " In the event that either of my said nieces shall not survive me, but shall leave issue surviving me, then the principal of the share designed for her use shall go to such issue absolutely, if she shall leave no issue surviving me then such share shall form a part of my said residuary estate and the said number of shares into which my said residuary estate shall be divided shall be reduced accordingly." This clause was inoperative because all the nieces survived, but this reduction in the number of the *shares* makes it clear that it was intended, so far as the interests of the nieces were concerned, that the estate should be divided into an equal number of shares, one for each niece and her issue.

The questions presented at Special Term affected, *first,* the sums which were *added* to the principal of the share of Fannie Draper by reason of the death of her sister and cousin without issue; and, *second,* the disposition of the original principal of her share in view of the fact that she was predeceased by Mrs. Crafts, who left surviving four children. As to the first question, there was scarcely occasion for dispute, and the Special Term correctly held, as all agree, that the *additions* should be divided, one-third to the fund held in trust for Jessie D. Bowne, one-third to the fund in trust for Maria Polk, and the remaining one-third divided *per capita* among the surviving issue of Mrs. Crafts. The appeal is from the decision of the Special Term holding that as to the principal of the original share held in trust for Fannie Draper,

one-half should be added to the trust for Jessie D. Bowne, and one-half to the trust for Maria Polk, excluding from any present participation in such share the surviving issue of Mrs. Crafts. As we have seen, the will provided that in the contingency of a niece dying without issue surviving " the said share so set apart for her use shall be divided and added in equal parts to the remaining shares." The question then is, what were the " remaining shares " when Fannie Draper died without issue? Respondents contend that " remaining shares " means shares of the surviving nieces. The will is not so written, and the draftsman was evidently a skilled lawyer. If such had been the intention it would have been very obvious and simple to have written " added in equal parts to the shares of the surviving nieces." The reason why it was not so written was that it would have tended to create gross inequality, whereas the scheme of the will is absolute equality, the number of equal shares of the residuary estate being determined by the number of the testator's nieces, children of nieces taking a vested remainder in their mother's share. For example, if Mrs. Crafts had died first, the share set apart for her and her children would have been approximately $56,000. Then if four of the nieces died childless (three of them have) and the sixth to die left issue surviving, the share of the sixth, to be enjoyed by her children, would have had added to it the entire original principal of the fifth niece, and would also have shared in additions from the shares of three other nieces, whereas the children of Mrs. Crafts would have received nothing whatever on the death of the second niece and would have merely shared in the additions to the shares of the third, fourth and fifth nieces. A calculation shows that in such event, if original principal were to be shared only by *surviving nieces* the share of the testator's estate inherited by the children of the last survivor would be more than double the share of the children of the first survivor. No such result was intended.

When a niece died without issue, the number of the " remaining shares " was reduced by one. Such share was completely distributed and extinguished. Not so, however, when a niece died leaving issue, as in the case of Mrs. Crafts. The estate continued to have as many *shares* as before. The chil-

dren not only took their mother's original share but became entitled to a division of additions to the share of any niece who subsequently died. For the purpose of such distribution of additions to shares, the will expressly provides that the issue of a deceased niece shall take the share the parent would have taken if then living. No reason is apparent why the testator, in a will whose scheme is equality, should provide that the children of a deceased niece should share with surviving nieces in distribution of additions and yet intend that, for the purpose of distributing original principal, their interest in the estate should not be reckoned as one of the " remaining shares."

The will has been construed as though the vesting in a child of · its mother's share which, on the mother's death, became the absolute property of the child, extinguished the share. But a share paid over in part is just as much a share as is a share continuing in the hands of trustees. Convincing evidence that the testator did not consider that any such contingency extinguished a share is found in his expressly keeping the share alive and intact to receive distribution of additions. No legal reason compelled this, and if the scheme of the will had been merely to swell the shares of the surviving nieces, to the exclusion of children of deceased nieces, it seems reasonable to assume that he would have given surviving nieces all of the additions to the share of a deceased niece as well as all of the original principal of the share.

Much is made of the express disposition of the additions so as to include children of a deceased niece, as contrasted with the simple provision for adding the principal to the " remaining shares," without specifying that this was meant to include children. The obvious reason for making an express provision for the distributing of additions after two lives was to make the trust valid and not leave it to be saved by construction, as in *Vanderpoel* v. *Loew* (112 N. Y. 167). Why, in the case of principal, " the remaining shares " were not particularized so as to include specifically children of a deceased niece can only be conjectured. The most likely reason is that the meaning was sufficiently obvious. If it meant only " surviving nieces," it is much more difficult to determine why the draftsman did not say so, especially

in view of the inequalities that such a construction would tend to bring about.

It seems to us that the plain and natural construction of clause 5 is that upon the birth of children of a niece, the remainder of the original share held in trust for the mother of such children vested in them, and such vesting became absolute when they survived the mother; further, that there also vested in them an interest, subject only to the intervening right of beneficial enjoyment by their own parent, in the shares of the other nieces.

It follows that the part of the judgment below which provided for the disposition of the original share held in trust for Fannie Draper should be modified so as to provide that there should be distributed among the issue of Mrs. Crafts one-third thereof, and that another third should be paid over to the plaintiff, as trustee of the trust created for the benefit of Maria H. Dehon Polk and remaindermen, and the other third thereof paid over to the defendant Grosvenor S. Hubbard, as substituted trustee of the trust created for the benefit of Jessie Draper Bowne and remaindermen.   Costs payable out of the estate to all parties appearing and filing briefs herein.

SCOTT and DAVIS, JJ., concurred; LAUGHLIN, J., and CLARKE, P. J., dissented.

LAUGHLIN, J. (dissenting):

This is an action for the settlement of the accounts of the plaintiff as substituted trustee of the trust created by the will of John A. Haggerty, deceased, for the benefit of Fannie Draper and for the construction of the will.  By the 5th paragraph of the will the testator gave his residuary estate to his executors in trust to divide the same into six equal shares, to invest and hold each share separately and to pay over the income of one share to each of his six nieces for life. The further provisions of the will upon which the question presented by the appeal depend are as follows:

" In the event that either of my said nieces shall not survive me, but shall leave issue surviving me, then the principal of the share designed for her use shall go to such issue absolutely, if she shall leave no issue surviving me then such share shall form a part of my said residuary estate and the

said number of shares into which my said residuary estate shall be divided shall be reduced accordingly.

"And upon the Further Trust, upon the death of any one *of my said nieces who shall survive me,* leaving issue her surviving to pay and deliver the share which had been set apart for her use, and *any addition thereto* that may have been made as hereinafter provided, to such her issue, if more than one issue then share and share alike, if she shall leave no issue surviving her then the said *share so set apart for her use shall be divided and added in equal parts to the remaining shares* and such addition to each share shall at the death of the takers thereof respectively without issue surviving be divided equally among the then survivors of said nieces, the issues then living of any of said nieces then dead to take the share the parent would have taken if then living, and as to the share of the last survivor of said nieces, in case she shall die leaving no issue her surviving, but issue of any or either of the other deceased nieces shall survive her, then I give the last mentioned share, with any addition that may have been made thereto, to such surviving issue of such other nieces (the issue to represent the parent and to take the same share the parent would have taken if then living), if no issue of either of such other nieces shall so survive then I give said last mentioned share, with said additions to such person or persons as such last surviving nieces shall by her last will direct and appoint, and in default of such will I give the same to my next of kin under the laws of the State of New York as if I had died intestate."

The six nieces survived the testator, but only two, Mrs. Jessie Draper Bowne and Mrs. Maria Haggerty Dehon Polk, are now living. Three of the nieces predeceased Fannie Draper, who died on the 10th day of January, 1914, without issue. One only of the three nieces who predeceased her left issue, and she was Clemence Haggerty, who by marriage became Mrs. Clemence H. Crafts, and who died on the 19th day of February, 1912, leaving four daughters, who are still living. Three of them are appellants, and the other appellants are the issue of two of the daughters of Mrs. Crafts. Mrs. Crafts was the third niece to die and upon the death of the two nieces who predeceased her without issue, there was

First Department, July, 1917.     [Vol. 179.

added to the share held in trust for her the proportionate part of the shares held in trust for said two nieces as provided in the will, and upon her death her original share and those additions to the share held in trust for her, passed to her issue by virtue of said 5th clause of the will.

By the decision from which the appeal has been taken the *additions* to the share held in trust for Fannie Draper, the fourth niece to die, resulting from the death of the two other nieces who died without issue, have been distributed absolutely in accordance with said 5th clause, and the *original* share held in trust for Fannie Draper has been added to the shares held in trust for the two surviving nieces in equal parts to be so held in trust for them in accordance with the provisions of said 5th clause of the will. The appellants contend that upon the death of Fannie Draper the issue of Mrs. Crafts took a vested one-third interest in the remainder of the original share held in trust for her and are entitled to have the same distributed to them and that one-third only of said remainder should be added to the share held in trust for each of the two surviving nieces. Their argument is that while there is surviving issue of a deceased niece, the share for that niece is deemed still to exist, notwithstanding the fact that it was wholly distributed upon her death.

If the will is to be construed literally it is quite clear, I think, that the decree is in accordance with the provisions thereof. It will be observed that the testator directed that upon the death of any one of the six nieces the original share set apart for her use and any additions resulting from the death of any other niece or nieces, should go to her issue absolutely if she died leaving issue, and that if she died without issue, then the *share* set apart for her use should be divided and added in equal parts to the *remaining shares*, and that the *additions* to the share resulting from the death of one or more nieces should be divided equally among the then survivors of the nieces and the issue then living of any deceased niece, such issue to take the share that their parent would have taken if then living. It will thus be seen that the will was carefully drawn to avoid offending against the statute which prohibits the suspension of the power of alienation and of the absolute ownership for more than two lives in being.

(See 1 R. S. 773, § 1; revised by Pers. Prop. Law [Gen. Laws, chap. 47; Laws of 1897, chap. 417], § 2; now Pers. Prop. Law [Consol. Laws, chap. 41; Laws of 1909, chap. 45], § 11; 1 R. S. 723, §§ 14, 15; revised by Real Prop. Law [Gen. Laws, chap. 46; Laws of 1896, chap. 547], § 32; now Real Prop. Law [Consol. Laws, chap. 50; Laws of 1909, chap. 52], § 42.) Each original share was to be held in trust for the life of one of the nieces and then to be divided and each part held in trust for the life of another niece, and then to become vested and distributed absolutely. It is perfectly clear, I think, therefore, that the primary purpose of the testator was to insure an income to his *nieces* during life so far as that could lawfully be done, and the provisions for the *issue* of nieces were subordinate to this primary purpose. This will does not show a testamentary scheme or intention to provide for an equal distribution of the residuary estate among the nieces and the issue of deceased nieces and it is not susceptible of that construction. It will be observed that each niece took only a *life use* in one-sixth of the residuary estate and they only took an interest in the corpus of the shares held for the use of the other nieces after such shares were held in trust for two lives in being, or as long as the statute permitted. This, to my mind, indicates that the testator intended to insure them against want by not leaving it within their power to dissipate the principal. On the other hand, with respect to the issue of deceased nieces, the will indicates no such concern on the part of the testator, for he provided that if any niece should predecease him leaving issue, her issue should upon his death take absolutely the share which was to be set apart for her use. When it came to the final distribution of any share or part of a share after the same had been so held in trust for two lives in being, he provided that the issue of deceased nieces should share with surviving nieces the same as if their parents were then living. But the appellants here seek to go further and demand that one-third of the original share set apart for Fannie Draper shall now be distributed to them absolutely, which would give them an advantage over the surviving nieces, who, concededly, took only a life use in the part of Fannie Draper's original share which is to be added to their original shares. Their contention is that they now take

one-third of the original Fannie Draper share and that upon the death of the fifth niece to die they will share equally with the sole surviving niece in the distribution of the one-third of the Fannie Draper share now to be added, according to their contention, to the share of each of the two surviving nieces and held in trust for their respective lives. I fail to see how that would produce equality.

I am, therefore, of opinion that the will should be construed as it reads, and as it has been so construed, I think the decree should be affirmed.

CLARKE, P. J., concurred.

Judgment modified as directed in opinion, with costs to all parties appearing and filing briefs herein payable out of the estate. Order to be settled on notice.